UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

GRAM ALEXANDER BENTON,

                        Petitioner,                    Case No. 2:20-cv-254

v.                                                     Honorable Janet T. Neff

CONNIE HORTON,

                        Respondent.
_____/

## OPINION

          This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary

review of the petition to determine whether "it plainly appears from the face of the petition and

any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4,

Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily

dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the

duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes

those petitions which raise legally frivolous claims, as well as those containing factual allegations

that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After

undertaking the review required by Rule 4, the Court declines to exercise jurisdiction over the

petition based upon the concurrent sentence doctrine.

### Discussion

#### I.      Factual allegations[1]

Petitioner Gram Alexander Benton is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.  On September 26, 2011, Petitioner entered guilty pleas in two Kent County Circuit Court criminal prosecutions.  In case number 11-002354-FH, Petitioner pleaded guilty to one count of embezzlement of more than $1,000.00 but less than $25,000.00, in violation of Mich. Comp. Laws § 750.174(4).  As part of the plea deal, the prosecutor dismissed the habitual offender enhancement.  On November 9, 2011, the court sentenced Petitioner to imprisonment for 1 year, 6 months to 5 years.

In case number 11-006867-FC, Petitioner pleaded guilty to armed robbery, in violation of Mich. Comp. Laws § 750.529, first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2), felon in possession of a firearm (FIP), in violation of Mich. Comp. Laws § 750.224f, and use of a firearm during the commission of a felony (felony firearm), in violation of Mich. Comp. Laws § 750.227b.  On November 9, 2011, the court sentenced Petitioner to a prison term of 40 to 60 years for armed robbery, to be served consecutively to concurrent sentences of 15 to 30 years for first-degree home invasion and 4 to 20 years for FIP, to be served consecutively to a sentence of 2 years for felony firearm.  The resulting controlling string of

---

[1] The Rule 4 advisory committee notes provide that the Court's preliminary review of the petition "may properly encompass any exhibits attached to the petition, including but not limited to, transcripts, sentencing records, and copies of state court opinions."  Advisory Committee Notes to Rule 4, 1976 Adoption.  Moreover, the Court may order any of these items for consideration if they are not yet included with the petition.  *Id.*  Petitioner included portions of the state court record as exhibits to his petition.  To ensure that the Court's review was based upon a complete picture of the procedural history, the Court reviewed the entire Kent County Circuit Court files for Petitioner's criminal cases. References to the state court record materials, if they are not exhibits to the petition and cited accordingly, are to the materials as they appear in the circuit court file.

minimum sentences would be 2 years, plus 15 years, plus 40 years.  The controlling maximum string would be 2 years, plus 30 years, plus 60 years.  Effectively, in combination, Petitioner received sentences of 57 to 92 years.

The initial judgment of sentence did not reflect the sentences announced during the sentencing hearing.  The November 9, 2011, Judgment of Sentence reflects the same sentences for each conviction; but the armed robbery, first-degree home invasion, and FIP sentences were all to run concurrently to one another and consecutively to the felony-firearm sentence.  The judgment as entered yields combined sentences of 42 to 62 years.  The sentences shown on the initial judgment are the sentences reflected on the Michigan Department of Corrections Offender Tracking Information System website.  *See* https://mdocweb.state.mi.us/otis2/otis2profile. aspx?mdocNumber=586611 (visited Dec. 31, 2020).  The "Earliest Release Date" of July 2, 2053, is consistent with a controlling minimum string of 42 years and the "Maximum Discharge Date" of July 2, 2073, is consistent with a controlling maximum string of 62 years.

Petitioner applied for leave to appeal in the Michigan Court of Appeals,[2] raising issues regarding the scoring of the three sentencing guideline offense variables.  *Benton I* (Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 1-2, PageID.16-37.)  Petitioner also attempted to file a *pro per* supplemental brief.  *Benton I* (Pet'r's Supp. Pro Per Br., ECF No. 1-2, PageID.38-58.) As part of that brief, however, Petitioner sought a motion to remand for an evidentiary hearing seeking, ultimately, to withdraw his plea.  *Benton I* (*Id.*)  The court of appeals rejected Petitioner's *pro per* submission because, where he was represented by counsel, he could only file a

---

[2] Petitioner did not provide his direct appeal submissions along with this petition.  He provided those materials with his first habeas petition, which is discussed below.  That case, *Benton v. Woods*, No. 2:14-cv-62 (W.D. Mich.) shall be referenced herein as *Benton I*.

3

supplemental appeal brief, not a motion, unless he was granted leave by the court of appeals. *Benton I* (Mich. Ct. App. Correspondence, ECF No. 1-2, PageID.59.)  Within a couple of weeks, appellate counsel sought leave to file the *pro per* motion to remand.  *Benton I* (Pet'r's Mot. for leave to file *Pro Per* Mot. to Remand, ECF No. 1-2, PageID.61-62.)

On September 28, 2012, the court of appeals issued an order granting Petitioner leave to file his *pro per* supplemental brief which included the motion to remand, but denying the motion to remand.  *Benton I* (Mich. Ct. App. Order, ECF No. 1-2, PageID.63.)  The appellate court denied Petitioner's motion to remand, not because counsel filed it late, as Petitioner suggests, but because such motions must be filed within six months of judgment and the motion; whether considering the date Petitioner first attempted to file it *pro per*, or the date counsel sought leave to file it, the motion was filed too late.  According to the Michigan Court Rules, once six months has passed, Petitioner's path to relief is no longer through a motion to withdraw his plea, but through a motion for relief from judgment.

Petitioner's supplemental *pro per* brief raised additional substantive issues attacking his convictions.  He argued that his plea was involuntary because neither counsel nor the court had properly advised him regarding maximum penalties, mandatory minimums, or the possibility of consecutive sentences.  The plea transcript in the trial court file entirely undercuts Petitioner's arguments.  The court of appeals denied leave to appeal.  It appears that the court of appeals, in denying leave to appeal, was rejecting the arguments raised in the brief filed by counsel and not the arguments made in the *pro per* supplemental brief.  To construe the appellate court's denial of leave to appeal to include the substance of Petitioner's *pro per* supplemental issues would effectively moot the court's direction to raise those issues by way of a motion for relief from

4

judgment.  Although the court of appeals denied Petitioner's motion to remand, the court did remand the matter to the trial court to permit the trial court to amend the sentence to properly reflect the consecutive sentencing ordered at the sentencing hearing.

On October 26, 2012, the trial court entered an amended judgment of sentence that memorialized the consecutive sentences ordered at the sentencing hearing.  It is not apparent from the record why the MDOC has not incorporated the amended judgment of sentence into its calculation of Petitioner's "Earliest Release Date" or "Maximum Discharge Date."

After the trial court entered the amended judgment of sentence, Petitioner filed a *pro per* application for leave to appeal in the Michigan Supreme Court that included all of the issues raised in the court of appeals.  (Pet'r's Mich. Appl. for Leave to Appeal, ECF No. 1-3, PageID.68-91.)  By order entered April 1, 2013, the supreme court denied leave to appeal. Petitioner did not otherwise appeal the amended judgment of sentence.  The time to appeal the amended judgment, if it was appealable, expired at the end of April 2013.  Mich. Ct. R. 7.205(G).

About a year after the supreme court denied leave to appeal, Petitioner filed the *Benton I* petition.  That petition raised the sentencing issues from his direct appeal as well as a new claim that his appellate counsel was ineffective for failing to timely file a motion to withdraw plea on Petitioner's behalf.  *Benton I* (Pet., ECF No. 1, PageID.6-7.)  Petitioner also filed a motion to stay the proceedings to permit him to pursue a motion for relief from judgment in the state trial court.  Petitioner does not go into detail regarding the issues he intended to raise, but he does include "actual innocence" in one of the headings, the principal issue raised in his present petition. *Benton I* (Pet'r's Mot. to Stay, ECF No. 2, PageID.65.)  By order entered July 8, 2014, the Court

5

granted a stay, directing Petitioner to file his motion for relief from judgment in 30 days.  *Benton I* (Order, ECF No. 6, PageID.106-107.)

After the supreme court denied leave to appeal, the trial court record is silent for almost two years.  The next docketed item is correspondence from Petitioner to the trial court clerk inquiring about the status of a motion for relief from judgment that Petitioner claims his father had hand-delivered to the court on July 24, 2014.[3]  That correspondence was received on January 15, 2015.  The records show that the clerk sent Petitioner a copy of the docket entries and reported that no such motion had been filed.

On December 9, 2015, Petitioner filed a motion to lift the stay and to permit him to voluntarily dismiss the petition.  *Benton I* (Pet'r's Mot. to Remove Stay, ECF No. 8).  By order and judgment entered January 6, 2016, the Court granted Petitioner's motion and dismissed the petition without prejudice.  *Benton I* (Order & J., ECF Nos. 9, 10.)

Petitioner finally filed a motion for relief from judgment on June 28, 2017, raising the issues he now raises in his habeas petition.  In that motion, Petitioner acknowledges that, other than the applications for leave to appeal described above, he had filed "no other appeals, motions, or petitions challenging the judgments in these cases."  (Mot. for Relief from J., ECF No. 1-12, PageID.128.)  By order entered October 1, 2018, the trial court denied Petitioner's motion.  (Kent Cnty. Cir. Ct. Order, ECF No. 1-12, PageID.124.)

---

[3] The expected filing date would correspond with this Court's requirement that Petitioner file such a motion within 30 days of the motion to stay.  In fact, Petitioner filed a letter addressed to the clerk of this Court on August 8, 2014, claiming that a motion for relief from judgment was filed in the Kent County Circuit Court by hand delivery on August 4, 2014.  *Benton I* (ECF No. 7.)

Petitioner filed a motion for reconsideration. (Pet'r's Mot. for Reconsideration, ECF No. 1-12, PageID.121-122.) He signed it on October 22, 2018 (*id.*), and mailed it the same day (Expedited Legal Mail Disbursement Request, ECF No. 1-11, PageID.38). The trial court received it on October 25, 2018. The trial court denied the motion for reconsideration. (Kent Cnty. Cir. Ct. Order, ECF No. 1-12, PageID.120.) The date on the signature block was January 8, 2018, (*Id.*); the date it was file-stamped was January 9, 2019. The trial court has since confirmed that the order was entered on January 8, 2019. (Kent Cnty. Cir. Ct. Order, ECF No. 1-12, PageID.42.)

On May 13, 2019, Petitioner filed an application for leave to appeal the trial court's denial of his motion for relief from judgment. (Mich. Ct. App. Appl. for Leave to Appeal, ECF No. 1-12, PageID.81-86.) The court of appeals dismissed the application as untimely, evaluating the timeliness of the application based on the October 1, 2018, date that the trial court initially denied the motion for relief from judgment. (Mich. Ct. App. Order, ECF No. 1-12, PageID.80.)

Petitioner asked the court of appeals to reconsider its decision based on the motion for reconsideration he filed in the trial court. (Pet'r's Mot. for Reconsideration, ECF No. 1-12, PageID.78.) Measured from the date the trial court actually denied the motion for reconsideration, January 9, 2019, Petitioners' application for leave to appeal fell within the six-month deadline. By order entered July 12, 2019, the court of appeals denied the motion for reconsideration because the court concluded that Petitioner's motion for reconsideration in the trial court was filed too late for it to extend the time to file an application for leave to appeal. (Mich. Ct. App. Order, ECF No. 1-12, PageID.76.) Petitioner then sought leave to appeal that determination in the Michigan Supreme Court. (Mich. Appl. for Leave to Appeal, ECF No. 1-12, PageID.47-75.) The supreme

7

court denied leave by order entered January 2, 2020.  (Mich. Order, ECF No. 1-12, PageID.46.)

Petitioner sought reconsideration.  (Pet'r's Mot. for Reconsideration, ECF No. 1-12, PageID.43-

45.)  By order entered March 27, 2020, the supreme court denied reconsideration.  (Mich. Order,

ECF No. 1-12, PageID.41.)

On December 21, 2020, Petitioner filed his habeas corpus petition raising four

grounds for relief, as follows:

I.      There was an insufficient factual basis for the plea to felon in possession
charge, rendering the plea invalid, and [Petitioner] was actually innocent.

II.     Petitioner was denied his Sixth Amendment right to the effective assistance
of counsel [because counsel failed to investigate or understand the law
regarding the Felon in Possession charge].

III.    Appellate counsel was constitutionally ineffective [because appellate
counsel failed to investigate or understand the law regarding the Felon in
Possession charge].

IV.     Petitioner met all state-imposed deadlines, however, the court of appeals
erroneously dismissed appeal which prevented Petitioner from a proper and
fair appeal and prevented him from exhausting issues in the state courts,
violating his due process [rights].

(Pet., ECF No. 1, PageID.5-9.)   All of Petitioner's habeas grounds are directed at his FIP

conviction.

## II.   AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of

1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).   The AEDPA "prevent[s] federal habeas

'retrials'" and ensures that state court convictions are given effect to the extent possible under the

law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).   An application for writ of habeas corpus on

behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect

to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially

indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III. Discussion

### A. The petition appears to be untimely

Petitioner's application appears to be barred by the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). Section 2244(d)(1) provides:

10

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of

    (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured.   Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).  Petitioner appealed the judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Supreme Court denied his application on April 1, 2013.  Petitioner did not petition for certiorari to the United States Supreme Court. *Benton I* (Pet., ECF No. 1, PageID.3.)  The one-year limitations period, however, did not begin to run until the ninety-day period in which Petitioner could have sought review in the United States Supreme Court had expired.  *See Lawrence v. Florida*, 549 U.S. 327, 332-33 (2007); *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  The ninety-day period expired on June 30, 2013.

11

Petitioner had one year from June 30, 2013, until June 30, 2014, to file his habeas application. Petitioner filed his application on December 31, 2020. Obviously, he filed more than one year after the period of limitations began to run. Thus, absent tolling, his application is time-barred.

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed"). Petitioner reports that he filed a motion for relief from judgment on June 26, 2017. At that time, however, his period of limitation had already expired. The tolling provision does not "revive" the limitations period (i.e., restart the clock); it can only serve to pause a clock that has not yet fully run. *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001). Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations. *Id.*; *McClendon v. Sherman*, 329 F.3d 490, 493 (6th Cir. 2003). Even where the post-conviction motion raises a claim of ineffective assistance of appellate counsel, the filing of the motion for relief from judgment does not revive the statute of limitations. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (citing *McClendon*, 329 F.3d at 490). Because Petitioner's one-year period expired in 2014, his collateral motions filed in 2017 did not serve to revive the limitations period.[4]

Petitioner filed *Benton I* during the period of limitation. But the Supreme Court ruled in *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), that the limitations period is not tolled

---

[4] Moreover, even if the motion for relief from judgment Petitioner's father was supposed to have filed on July 24, 2014, were actually filed, it was filed too late to toll the period of limitation.

during the pendency of a federal habeas petition.  That is the reason the Sixth Circuit adopted a stay-and-abeyance procedure to be applied to mixed petitions.  *See Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002).  That procedure permits issues that are exhausted in accordance with a federal court's stay and abeyance order to effectively relate back to the filing of the federal habeas petition.  That is not the same as statutory tolling, however, and where Petitioner has failed to comply with the Court's direction when it stays a case and where the exhausted claims are not brought to judgment in resolving the petition, the period of limitation continues to run.  Put simply, the pendency of *Benton I* would not render Petitioner's claim timely.  In fact, even if *Benton I* tolled the period of limitation while it was pending, too much time passed between the dismissal of *Benton I* and Petitioner's eventual filing of his motion for relief from judgment for his present habeas petition to be timely.

The one-year limitations period applicable to § 2254 is also subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 645 (2010).  A petitioner bears the burden of showing that he is entitled to equitable tolling.  *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  The Sixth Circuit repeatedly has cautioned that equitable tolling relief should be granted "sparingly."  *See, e.g., Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2011), *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case.  The fact that Petitioner is untrained in the law, was

proceeding without a lawyer, or may have been unaware of the statute of limitations does not warrant tolling.  *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse his late filing."); *Allen*, 366 F.3d at 403 ("'[I]gnorance of the law alone is not sufficient to warrant equitable tolling.'") (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)).  Accordingly, Petitioner is not entitled to equitable tolling of the statute of limitations.

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception.  In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "'it is more likely than not that no reasonable juror would have convicted [the petitioner.]'" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327 (addressing actual innocence as an exception to procedural default)).  Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence.  *Id.* at 399-400.

In the instant case, although Petitioner claims that he is actually innocent.  His claim is not based on any new evidence, it is based on an interpretation of the Michigan FIP statute that suggests that Petitioner was not a felon prohibited from possessing a firearm at the time he allegedly committed the offense.  According to Petitioner, under the statute, he was barred from possessing a firearm until three years after he had paid all his fines, served all terms of

14

imprisonment, and successfully completed all conditions of probation or parole.  He reports he had paid, served, and completed, as required by the statute, three years and four months before he committed the offense.  (Presentence Investigation Report, ECF No. 1-6, PageID.28; Kent Cnty. Cir. Ct. Statement, ECF No. 1-5, PageID.26, Kent Cnty. Cir. Ct. Discharge, ECF No. 1-4, PageID.24; Kent Cnty. Cir. Ct. Statement, ECF No. 1-3, PageID1-3; Kent Cnty. Cir. Ct. Discharge, ECF No. 1-2, PageID.20.)  Petitioner's argument, on the limited record before the Court, appears to be factually correct.  If so, his argument has some persuasive force, unless his felony is a "specified felony" under the statute.  When the predicate felony is a "specified felony," there are additional requirements before Petitioner could possess a firearm and Petitioner had not met those requirements before he committed the home invasion and armed robbery.

Petitioner presents an argument that his predicate felonies of larceny from a building are not specified felonies.  Put differently, Petitioner has made a colorable claim of actual innocence.  Accordingly, it is possible that the statute of limitations would not bar consideration of his claim.  At this preliminary stage of the habeas proceedings, the possibility that Petitioner is actually innocent of FIP, and that he pleaded guilty without knowing he was innocent of that charge, counsels against applying the statute of limitation to bar Petitioner's claim.

B.      **Exhaustion & Procedural default**

Before this Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly

presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Fair presentation has a substantive component and a procedural component. With regard to substance, fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employ constitutional analysis in a similar fact pattern. *Picard*, 404 U.S. at 277-78; *Levine v. Torvik*, 986 F. 2d 1506, 1516 (6th Cir. 1993). With regard to procedure, "[t]he fair presentation requirement is not satisfied when a claim is presented in a state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421, at *1-2 (6th Cir. May 17, 1996) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1998)); *see also Long v. Sparkman*, No. 95-5827, 1996 WL 196263, at *2 (6th Cir. Apr. 22, 1996); *Fuller v. McAninch*, No. 95-4312, 1996 WL 469156, at *2 (6th Cir. Aug. 16, 1996).

Petitioner filed his motion for relief from judgment in the state trial court to exhaust his remedies there. The trial court denied relief. Petitioner presented the issues to the Michigan Court of Appeals, but he presented them in a procedurally inappropriate manner—after the deadline for presenting the claims had passed. Therefore, his presentation to the Michigan Court of Appeals did not suffice to exhaust his state court remedies. At this point, however, he cannot fix the problem. He cannot go back in time to file a timely application for leave to appeal in the court of appeals. Mich. Ct. R. 7.205(G). And he cannot go back to the trial court to start the

16

process over because he is only permitted to file one motion for relief from judgment. Mich. Ct.

R. 6.502(G).

Failure to exhaust state court remedies is only a problem if a state court remedy

remains available for petitioner to pursue. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no

further state remedy is available to Petitioner, his failure to exhaust does not bar relief; but where

fair presentation has failed because of procedural improprieties, the claim is procedurally defaulted

and the federal court must determine whether cause and prejudice exists to excuse the failure to

present the claim in state court. *Id.* Other courts have concluded that the doctrine of procedural

default bars consideration of the merits of a claim in this context:

> Following the state trial court's denial of Hatfield's motion for relief from
> judgment, Hatfield had only six months to appeal. *See* Mich. Ct. R. 6.509(A),
> 7.205(G)(3). As the state trial court denied Hatfield's motion in 2015, six months
> has long since passed and, as noted, Hatfield has not appealed. Moreover, Hatfield
> cannot file a second motion for relief from judgment . . . absent a showing of new
> evidence not discovered prior to his first motion or a retroactive change of law since
> his first such motion. *See* Mich. Ct. R. 6.502(G). And there is no reason to think
> that Hatfield could make any such showing . . . . Thus, it appears that Hatfield
> cannot now exhaust his claim . . . . It follows that the claim is procedurally
> defaulted. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Williams v.
> Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (describing two types of procedural
> default).

*Hatfield v. McKee*, No. 15-10101, 2018 WL 1254947, at \*5-6 (E.D. Mich. Mar. 12, 2018); *see*

*also Sturgess v. Berghuis*, No. 5:06-cv-14234, 2008 WL 2937784, at \*10 (E.D. Mich. Jul. 24,

2008) ("Petitioner failed to timely file his application under that rule and the Michigan Court of

Appeals rejected his application on that basis. The procedural rule relied upon by the Michigan

Court of Appeals was firmly established and regularly applied at the time of Petitioner's default.")

(citations and footnote omitted); *McDaniels v. Prelesnik*, No. 08-cv-11548, 2015 WL 3441150, at

\*7 (E.D. Mich. May 28, 2015) ("[T]he Michigan Court of Appeals denied his delayed application

for leave to appeal as untimely under Michigan Court Rule 7.205(F)(3) . . . the state court rule[ is]

an adequate and independent state ground for denying review of McDaniels' federal constitutional claims.").

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

18

Petitioner must show cause for his failure to timely file his application for leave to appeal.  He has not.  He suggests that the tardiness of his application is a product of the date error on the order denying his motion for reconsideration.  There is nothing in the record to support that claim.  The Michigan Court of Appeals order dismissing the appeal rejects Petitioner's appeal as untimely as measured by the issuance of the October 1, 2018, order denying the motion for relief from judgment, not the January 9, 2019, order denying Petitioner's motion for reconsideration.  Petitioner suggests that he did not timely file his motion for reconsideration in the trial court because he could not mail it on a weekend.  The state court, however, does not apply a mailbox rule to prisoner filings of post-conviction motions.  *Moore v. Woods*, No. 18-1356, at *2 (6th Cir. Jun. 20, 2018) ("[T]he timeliness of a prisoner's post-conviction motion is governed by state law, and Michigan applies the 'prison mailbox rule' only to direct appeals.") (citing *Vroman v. Brigano*, 346 F.3d 598, 603-604 (6th Cir. 2003)).  Therefore, the date Petitioner mailed the motion was immaterial.  Put simply, Petitioner has not shown cause for his failure to timely submit his application for leave to appeal.

It is possible, however, that Petitioner's claim of actual innocence might provide a gateway through the procedural default bar.  *Schlup*, 513 U.S. at 327.  Although Petitioner's claim is not premised on the discovery of new evidence, it is a colorable claim that he is actually innocent of the FIP charge.  At this preliminary stage, dismissal of Petitioner's claims on grounds of procedural default may not be appropriate.

## C.    Concurrent sentence doctrine

The "concurrent sentence doctrine" invests the court with discretion to decline to hear a substantive challenge to a conviction when the sentence the petitioner is serving on the challenged conviction is concurrent with an equal or longer sentence on a valid conviction.  *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935

n.3 (6th Cir. 1989).  The doctrine has its origins in appellate practice applicable to direct review of criminal cases.  *See Benton v. Maryland*, 395 U.S. 784, 788-91 (1969); *Hirabayashi v. United States*, 320 U.S. 81 (1943).  In these cases, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody.  *See, e.g., Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976).  The standard guiding the court's discretion is whether there is any possibility of an adverse "collateral consequence" if the conviction is allowed to stand.  *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-6448, 1990 WL 116538, at *3 (6th Cir. Aug. 13, 1990); *United States v. Jackson*, No. 99-5889, 2000 WL 1290360, at *2 (6th Cir. Sept. 7, 2000); *United States v. Bell*, No. 95-6479, 1997 WL 63150, at *3 (6th Cir. Feb. 12, 1997).

Although the doctrine has its roots in direct appeals, the federal courts apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a petitioner's release from custody.  *See, e.g., Cranmer v. Chapleau*, No. 95-6508, 1996 WL 465025 (6th Cir. Aug. 13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991); *Williams v. Maggio*, 714 F.2d 554 (5th Cir. 1983); *VanGeldern v. Field*, 498 F.2d 400, 403 (9th Cir. 1974). The exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction is not overturned.  *Williams*, 714 F.2d at 555.  "'[A]dverse collateral consequences' such as 'delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma[,]'" may be considered.  *Buffin v. United States*, 513 F. App'x 441, 448 (6th Cir. 2013).  In *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8

(6th Cir. 2010), the Sixth Circuit also included "an effect on . . . a potential pardon" and "the potential for use as evidence of a prior bad act" as additional adverse consequences.  *Id*.

Such remote consequences, however, "are most salient on direct appeal, not on a collateral challenge." *Buffin,* 513 F. App'x at 448.  The *Buffin* court pulled the list of collateral consequences from *United States v. DiCarlo*, 434 F.3d 447, 457 (6th Cir. 2006).  The *DiCarlo* court, in turn, quoted the list from *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996).  The *Rutledge* Court derived the list of collateral consequences from *Benton v. Maryland*, 395 U.S. 784, 790-91 (1969), and *Sibron v. New York*, 392 U.S. 40, 54-56 (1968).  *DiCarlo*, *Rutledge*, *Benton* and *Sibron* were direct appeals.  Moreover, *Benton* and *Sibron* considered the existence of collateral consequences because absent such a consequence there would have been no justiciable controversy in those cases.  The *Benton* Court noted that the fact that it could conceive of collateral consequences that might give rise to a justiciable controversy and permit the court to exercise jurisdiction did not deprive the concurrent sentence doctrine of validity as a rule of judicial convenience.  *Benton*, 395 U.S. at 791.  The *Benton* Court simply chose to not apply it in that case.  *Id*. at 792.  *Rutledge* and *DiCarlo* (and the other cases cited in *DiCarlo*) are all double jeopardy cases where the existence of collateral consequences, no matter how slight, creates the multiple punishments barred by the Double Jeopardy Clause.  Such slight or remote collateral consequences should not preclude application of the concurrent sentence doctrine when jurisdictional and double jeopardy considerations are not at issue.  If they did, the doctrine would simply disappear.

The present case is appropriate for application of the concurrent sentence doctrine.  Petitioner is presently serving his 4 to 20-year sentence for FIP.  He is serving it concurrently with his sentence of 15 to 30 years for first-degree home invasion.[5]  The present petition challenges

---

[5] Moreover, Petitioner will not become eligible for parole until he has served the entire consecutive minimum string of sentences—57 years.  Petitioner's armed robbery sentence is consecutive to his first-degree home invasion sentence,

only Petitioner's conviction for FIP.  Thus, even if the court were to vacate that conviction, the maximum relief available would be invalidation of that sentence, still leaving Petitioner with the entire balance of his 57 to 92 year sentences.  Release from prison would not be available even if the conviction challenged in this petition were vacated.

Moreover, the sorts of collateral consequences that counsel against application of the doctrine seem to be unlikely in Petitioner's case.  Petitioner has already worked himself up to the very peak of Michigan's habitual offender sentencing scheme.  Even if Petitioner's FIP conviction is overturned his next felony will still put him in the habitual offender-fourth offense category.  Mich. Comp. Laws § 769.12.  Petitioner's significant criminal history would rob the FIP offense of any singular significance in the eyes of a subsequent parole board, jury, or pardoning authority.  Moreover, the stigma associated with Petitioner's criminal history is not likely to be meaningfully reduced if Petitioner's FIP conviction were removed.

If the concurrent sentence doctrine retains any vitality—and the Supreme Court and the Sixth Circuit Court of Appeals indicate that it does—this is a case where it should be applied. Accordingly, the Court will exercise its discretion and decline to consider this habeas petition. Should Petitioner succeed in his challenge to his armed robbery and first-degree home-invasion conviction (he has already served the entirety of his felony-firearm sentence) the concurrent sentence doctrine would no longer apply and Petitioner could refile this petition.

---

but not to his FIP sentence.  Therefore, Petitioner could, technically, serve his FIP sentence concurrently with his armed robbery sentence if his first-degree home invasion sentence were somehow completed before the FIP sentence. Although that possibility is not foreclosed by judgment of sentence, it is foreclosed by Michigan Department of Corrections policy.  Pursuant to the applicable Michigan Department of Corrections policy directive, "if an offender is serving consecutive sentences, none of the sentences that are part of the consecutive string shall be terminated until all sentences in that string have been served."  Mich. Dep't of Corr. Policy Directive 03.01.135 (eff. Apr. 15, 2019). Thus, there is never a time when Petitioner could serve his FIP sentence that he is not serving it concurrently with his home-invasion sentence.

**IV.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.   A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.   *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).   Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.   Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).   *Murphy*, 263 F.3d at 467.   Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.   Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."   *Id.*   "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.   *Id.*

This Court's dismissal of Petitioner's action under the concurrent sentence doctrine stands entirely separate from the merits of Petitioner's claim.   The dismissal is more in the nature of a procedural dismissal.   The dismissal, however, is entirely within the discretion of the Court under the doctrine.   The Court finds that reasonable jurists could not conclude that this Court's determination that the concurrent sentence doctrine is applicable here is debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.   Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has

23

failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### <u>Conclusion</u>

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   January 7, 2021                              /s/ Janet T. Neff
                                                      Janet T. Neff
                                                      United States District Judge